UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VALERIE SULLIVAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-12126-IT |
| | * | |
| ETECTRX, INC., JEFFREY P. SPAFFORD, | * | |
| EDWARD H. HENSLEY, RICHARD J. | * | |
| KRUZYNSKI, and ETRX HOLDINGS, | * | |
| INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

May 20, 2022

TALWANI, D.J.

Plaintiff Valerie Sullivan brought this action against her former employer, etectRx, Inc. ("etectRx"), three of its board members, and its holding company. She alleges that she was terminated without cause and then denied her severance benefits in violation of state law. Defendants have moved to dismiss for failure to state a claim. For the following reasons, the Motion to Dismiss [Doc. No. 19] is GRANTED.

I. **Factual Background**

The facts alleged in the Second Amended Complaint [Doc. No. 13] and the documents incorporated by reference are as follows. In August 2020, Sullivan accepted a position as Chief Executive Officer ("CEO") of etectRx pursuant to an employment agreement. Am. Compl. ¶ 33. The employment agreement had an effective date of August 1, 2020. Sullivan Agreement 1 [Doc. No. 20-1]. It provided that Sullivan's employment with etectRx would last "for a continuous term beginning on the Effective Date and continuing until the first (1st) anniversary of the Effective Date (the '*Initial Term*')" but would

>be automatically extended for an additional 12-month period commencing at the end of the Initial Term, and successively thereafter for additional 12-month periods (each such period an "**Additional Term**"), unless either party gives written notice to the other party that such party does not desire to extend the term of this Agreement. Written notice to not continue with the Initial Term or any Additional Term must be given at least sixty (60) days prior to the end of the Initial Term or the applicable Additional Term (the Initial Term and any Additional Terms, if applicable, collectively, the "**Employment Term**") . . . The date of expiration of the Employment Term shall be referred to as the "**Termination Date**."

Id. § 2. This section also included a provision that "[n]otwithstanding anything to the contrary contained in this Agreement, either Executive or the Company may terminate Executive's employment with the Company for any reason, at any time, upon not less than thirty (30) day's prior notice." Id.

Of relevance to this dispute, section 6 of the employment agreement, entitled "Effect of Termination," provided that if Sullivan's employment was terminated without cause or executive good reason, she would be entitled to receive (1) her $270,000 base salary for twelve months ("severance benefit") and (2) any amount of her base salary and bonus that were earned and unpaid through the date of termination, together with any accrued vacation. Id. at §§ 3, 6(a).

Sullivan alleges that on May 26, 2021, etectRx board members Jeffrey Spafford and Edward Hensley convened a videoconference with her, during which "it was made clear that [her] tenure with [etectRx] was being terminated presently." Second Am. Compl. ¶ 45 [Doc. No. 13]. They asked her to remain an "at-will employee" through August 1, 2021, and told her that she had not done anything that was "cause" for termination. Id. at ¶¶ 45-46. The next day, Spafford emailed Sullivan a letter confirming some of the prior day's conversation. Id. at 47. The subject line of the letter was "Notice of Non-Renewal of the Employment Agreement with etectRx, Inc.," and it stated:

>In accordance with Section 2 of the Agreement, this letter serves as written notice by etectRx of its decision not to continue the term of the Agreement beyond the Initial Term.

> Accordingly, the Agreement will expire on its own terms on August 1, 2021, at the end of the Initial Term (the "**Termination Date**"). In accordance with the Agreement, you will be entitled to your full income, earnings and benefits up to and including the Termination Date. We appreciate your relationship with etectRx and request that you remain employed as an at-will employee for continued support during this period. Your compensation as set forth in the Agreement will remain the same, as will the option and restricted stock award.

Notice [Doc. No. 20-2]; Second Am. Compl. ¶ 47 [Doc. No. 13].

Sullivan claims that the meeting and non-renewal notice constituted immediate termination of her employment, thereby triggering the severance benefit contained in section 6(a) of the employment agreement. Second Am. Compl. ¶¶ 51-52 [Doc. No. 13]. Nevertheless, Sullivan continued to perform her duties as CEO through August 1, 2021, and began to transfer her responsibilities to another executive in July 2021. Id. at ¶¶ 53-54.

Beginning in May 2021, Sullivan attempted to obtain the severance that she believed she was due upon termination of her employment, but Spafford, Hensley, and a third board member, Richard Kruzynski, refused to respond. Id. at ¶ 55. In June 2021, etectRx told Sullivan that she was not terminated and that they wanted her to stay on at-will. Id. at ¶ 56. On August 2, 2021, following her final day as CEO, Sullivan received an e-mail from etectRx claiming that she had "abandoned" her role. Id. at ¶ 58. The next day, Spafford sent Sullivan a letter "reminding" her of the restrictive covenants in the employment agreement, which included a non-competition clause. Id. at ¶ 60. The letter also stated that Sullivan's employment had not been terminated with the expiration of the employment agreement because etectRx had asked her to continue at will. Id. at ¶ 61. On January 15, 2022, after Sullivan had initiated this action, etectRx's counsel sent her a "Section 9(a) release," purporting to release her from the non-competition clause in the employment agreement. Id. at ¶ 68.

## II.  Procedural History

Sullivan initiated this action on December 24, 2021, and filed the operative Second Amended Complaint [Doc. No. 13] on January 25, 2022. She brought claims against Defendants for violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count I); breach of contract (Count II) and the implied covenant of good faith and fair dealing (Count III); violation of the Exchange Act, 15 U.S.C. § 78j(b) (Count IV); violation of the Massachusetts securities act, Mass. Gen. Laws ch. 110A, § 410(a)(2) (Count V); and indemnification (Count VI). Sullivan assented to dismissal of Counts IV and V without prejudice to their refiling in Delaware pursuant a forum-selection clause.

## III.  Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770

F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

**IV.    Discussion**

   A.    *Wage Act and Contract Claims*

Sullivan's Wage Act and contract claims rest on the notion that etectRx's notice of intent not to renew the employment agreement operated as a termination without cause, and that under section 6(a) of the employment agreement, she is therefore entitled to a year's salary as severance pay. The court accordingly considers whether the terms of the employment agreement and the facts as alleged support such an interpretation.

Under Delaware law,[1] contract interpretation is a question of law. Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992). It is also for the court to decide whether a contractual provision is ambiguous. Id. In making that determination, the court looks to the plain language of the contract. Id. "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Id. at 1196. "Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." Id. Where the contract is unambiguous, it must be enforced according to its terms. Id. at 1195-96.

As discussed above, the employment agreement provided that Sullivan's employment would last for a one-year period, commencing August 1, 2020, and ending a year later. The

---

[1] Sullivan's employment agreement is governed by Delaware substantive law. See Sullivan Agreement § 13 [Doc. No. 20-1].

agreement explicitly stated that "[t]he date of expiration of the Employment Term shall be referred to as the '***Termination Date***.'" Sullivan Agreement § 2 [Doc. No. 20-1]. It provided further that the term of employment would be automatically extended for additional one-year periods, unless either party provided written notice to the other that the agreement would not be extended at least sixty days prior to end of the current employment term.

On May 27, 2021, etectRx exercised its right not to renew the agreement, thereby terminating the agreement effective August 1, 2021. The notice used the term "termination date" in the same manner as the employment agreement:

> In accordance with Section 2 of the Agreement, this letter serves as written notice by etectRx of its decision not to continue the term of the Agreement beyond the Initial Term. Accordingly, the Agreement will expire on its own terms on August 1, 2021, at the end of the Initial Term (the "***Termination Date***"). In accordance with the Agreement, you will be entitled to your full income, earnings and benefits up to and including the Termination Date.

Notice [Doc. No. 20-2].

Notwithstanding the definition of "termination date" in the employment agreement and the fact that Sullivan continued working until August 1, 2021, Sullivan argues that in using the term "termination date" in its notice, etectRx was terminating her employment. Faced with similar facts, the First Circuit concluded that "'non-renewal' and 'termination' are distinct terms having different meanings" and that "[i]f the parties had intended non-renewal to constitute termination under the [a]greement, there would have been no need for disparate notice periods. Indeed, such disparate periods would make no sense." Mason v. Telefunken Semiconductors Am., LLC, 797 F.3d 33, 42 (1st Cir. 2015). That is equally the case here. Giving the contract language its plain meaning, etectRx's exercise of its non-renewal option did not terminate Sullivan's employment at that moment; it simply terminated the employment agreement at its expiration date. Sullivan is therefore not entitled to any severance. Where Sullivan's Wage Act,

breach of contract, and breach of implied warranty claims all stem from etectRx's alleged failure to pay her severance, she has failed to state a claim.

B.     *Indemnification Claim*

Sullivan also brings a claim for indemnification. She alleges that etectRx is contractually obligated to pay the attorneys' fees she incurred in prosecuting her breach of contract claims because she "is involved in this litigation by reason of her having been an officer of the Company." Second Am. Compl. ¶ 131 [Doc. No. 13].

"Delaware law grants corporations the power to indemnify any person who was or is a party to an action 'by reason of the fact that the person is or was a director, officer, employee or agent of the corporation.'" O'Brien v. IAC/Interactive Corp., 2010 WL 3385798, at *13 (Del. Ch. Aug. 27, 2010), aff'd sub nom. IAC/InterActiveCorp v. O'Brien, 26 A.3d 174 (Del. 2011). However, "a plaintiff litigating a claim for breach of [her] own employment contract generally is not a litigant 'by reason of the fact' [s]he was a director, officer, or even an employee of the corporation." Id.; see also Weaver v. Zenimax Media, Inc., 2004 WL 243163, at *3 (Del. Ch. Jan. 30, 2004) (observing that corporate officers signing employment contracts are "acting in a personal capacity in an adversarial, arms-length transaction").

Where Sullivan is litigating a personal claim against etectRx, she is not involved in the suit by reason of her having been an officer of etectRx and is therefore not entitled to indemnification.

## V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 19] is GRANTED. Counts I, II, III, and VI are dismissed with prejudice, and Counts IV and V are dismissed without prejudice to their refiling in Delaware pursuant to the forum-selection clause.

IT IS SO ORDERED

May 20, 2022                                                                /s/ Indira Talwani
                                                                            United States District Judge